# IN THE COURT OF APPEALS OF IOWA

No. 25-0240
Filed February 11, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jeremy Joseph Saul,**
Defendant–Appellant.

Appeal from the Iowa District Court for Woodbury County,
The Honorable Tod Deck, Judge.

**AFFIRMED**

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney
General, attorneys for appellee.

Considered without oral argument
by Chicchelly, P.J., Langholz, J., and Doyle, S.J.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A jury found Jeremy Saul guilty of eluding and first-degree theft for driving a stolen car in a high-speed chase.[1] *See* Iowa Code §§ 321.279(2), 714.1(4), 714.2(1) (2023). Saul appeals his convictions, challenging only the sufficiency of the evidence that he was the driver of the stolen car. Because substantial evidence supports the jury's verdict, we affirm Saul's convictions.

We review Saul's challenge to the sufficiency of the evidence supporting his convictions for correction of errors at law. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We are bound by the jury's verdict "if the verdict is supported by substantial evidence." *Id.* Evidence is substantial when "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* It matters not whether the evidence is direct or circumstantial. *See State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021). And in assessing its sufficiency, we view "the evidence in the light most favorable to the State" and make all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Brown*, 5 N.W.3d 611, 615–16 (Iowa 2024) (cleaned up).

The jury heard evidence that about 2:00 a.m. one morning in November 2023, a deputy sheriff was stopped at a stoplight in Sioux City. He observed a car from the intersecting street turning toward him and recognized it as matching the description of a car that had been stolen the month before. As the car passed, he saw a man in dark clothes driving and a woman in the passenger's seat. And once he confirmed that the car's license plate matched the stolen car, the deputy turned around to try to stop the car.

---

[1] Saul later admitted to being a habitual offender, so both convictions were enhanced under Iowa Code section 902.8 (2023). The district court sentenced Saul to two consecutive fifteen-year indeterminate prison sentences.

Instead, a high-speed chase ensued. Many law-enforcement officers and agencies joined in parts of the chase as the car eluded pursuit, making its way to the interstate highway and then across the state line to South Dakota—at times reaching speeds of 130 miles per hour. The chase ended only when the car crashed into a metal gate in a South Dakota nature preserve. Police officers from South Dakota saw a man get out of the driver's side of the car and run away toward a nearby lake. A woman got out of the passenger door, ran toward the officers, and was quickly apprehended.

Officers eventually spotted a man swimming across the lake to a wooded and grassy area on the other side. One officer saw him take off some of his clothes on the other side of the lake and then run off. After establishing a perimeter and searching for about an hour, officers found Saul hiding in the grass wearing only underwear and a tank top. He was soaking wet and shivering with his teeth chattering—it was only 40 degrees. The officers also found a pile of wet dark clothing, including a dark hoodie, at the tree line on that side of the lake. Because of his apparent hypothermia, an ambulance was called to take Saul to a hospital for treatment.

Meanwhile, the original deputy who started the chase had arrived on the scene and was assisting with the detention of the woman. After she told him her name, he learned from a Sioux City police officer who was familiar with her that she was dating Saul. The deputy looked up a prior booking photo for Saul and recognized him as the man the deputy saw driving the car when it passed by at the Sioux City stoplight. Later, the deputy also observed Saul in the ambulance and again confirmed that Saul was the person he saw driving the car.

All this was substantial evidence to support the jury's verdict that Saul was the driver of the stolen car. Not only did the deputy's eyewitness

testimony identify Saul as the driver, but a pile of circumstantial evidence supports the same conclusion.

On appeal, as he did at trial, Saul casts doubt on the credibility of the deputy's identification. Yet it was the jury's job to assess the deputy's credibility, and it is not our place to second-guess that decision. *See Brown*, 5 N.W.3d at 616. Saul also theorizes that the circumstances of his arrest could be consistent with him riding along "in the back of the car" rather than driving. Setting aside the strong evidence that there was no third person in the car—and the deputy's identification of Saul as the driver—"the State need not discredit every other potential theory to be drawn from circumstantial evidence." *Ernst*, 954 N.W.2d at 57.

Because the evidence was sufficient to convince a reasonable jury that Saul was the driver of the stolen vehicle beyond a reasonable doubt—and he challenges no other elements of his offenses—we affirm Saul's convictions.

**AFFIRMED.**